IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**LARRY EDWIN PATTERSON,**

    Petitioner,

v.                                                                                         Civil Action No. **3:10CV539**

**GENE M. JOHNSON,**

    Respondent.

## MEMORANDUM OPINION

Larry Edwin Patterson, a Virginia prisoner, brings this petition for a writ of habeas corpus challenging the execution of his sentence and his 1992 criminal conviction. Specifically, Patterson contends that he is entitled to relief upon the following grounds:

    Claim One    Respondent violated the *Ex Post Facto* Clause[1] by cancelling a portion of Patterson's Good Conduct Allowance ("GCA") credits, which increased the quantum of time Patterson is required to serve.

    Claim Two    Respondent violated the *Ex Post Facto* Clause by cancelling a portion of Patterson's GCA credits, which increased the time Patterson was required to serve before he could be considered eligible for discretionary parole.

    Claim Three    Patterson was denied due process of law by "an intentional extrinsic fraud being committed by court officers . . . through the presentation of false evidence - witness tampering - plan spoliation of criminal files - conflict of interest, all planned and carried out before trial began." (§ 2254 Pet. Attach 4 (capitalization and emphasis corrected).)

Respondent has moved to dismiss on the grounds that Claims One and Two lack merit and that this Court lacks jurisdiction to entertain Patterson's successive, unauthorized attack on his 1992 conviction set forth in Claim Three. Patterson has responded. The matter is ripe for disposition.

---

    [1] "No Bill of Attainder or *ex post facto* Law shall be passed." U.S. Const. art. 1, § 9, cl. 3.

## I. Challenge to Patterson's 1992 Conviction

In 1992, Patterson was convicted in the Circuit Court for the City of Richmond ("Circuit Court") of rape, robbery, and two counts of forcible sodomy. *See Patterson v. Va. Dep't Corr.*, No. 96-7438, 1998 WL 957464, at *2 (4th Cir. Sept. 22, 1998). Patterson filed a federal habeas petition with respect to these convictions with this District Court. *Id.* at *1. The Court denied Patterson's petition and the United States Court of Appeals for the Fourth Circuit affirmed that decision. *Id.* at *4.

The Antiterrorism and Effective Death Penalty Act of 1996 restricted the jurisdiction of the district courts to hear second or successive applications for federal habeas corpus relief by prisoners attacking the validity of their convictions and sentences by establishing a "'gatekeeping' mechanism." *Felker v. Turpin*, 518 U.S. 651, 657 (1996). Specifically, "[b]efore a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A). Because Patterson has not obtained authorization from the Fourth Circuit to file a successive § 2254 petition challenging his 1992 convictions, this Court lacks jurisdiction to entertain Claim Three. Accordingly, Claim Three will be dismissed for lack of jurisdiction.

## II. Patterson's *Ex Post Facto* Challenges to the Execution of his Sentence

"To fall within the *ex post facto* prohibition, [(1)] a law must be retrospective—that is, it must apply to events occurring before its enactment—and [(2)] it must disadvantage the offender affected by it, by altering the definition of criminal conduct or increasing the punishment for the

crime." *Lynce v. Mathis*, 519 U.S. 433, 441 (1997) (internal quotations and citations omitted).

As explained below, Patterson's claims fail to satisfy either of these requirements.[2]

### A. Claim One

#### 1. Virginia's GCA System

All inmates who commit offenses on and after July 1, 1981 and before January 1, 1995, automatically enter the GCA system for all felony and misdemeanor sentences. *See* Va. Code Ann. § 53.1-199 and § 53.1-202.1 (West 2011).

> GCA credits directly affect the [Virginia Department of Corrections's ("VDOC")] computation of a prisoners mandatory parole release date (MPRD). The MPRD is the date upon which an inmate must be released to the supervision of the Division of Community Corrections [*i.e.*, the parole board.] Each prisoner's MPRD is initially set six months prior to the end of his sentence pursuant to section 53.1-159 of the Virginia Code, which requires that all prisoners serve a minimum of six months of mandatory parole before final discharge, unless they represent a danger to the community.

*Coffin v. Murray*, 983 F.2d 563, 566 (4th Cir. 1992) (internal citation and quotations omitted; second alteration in original).[3] Nevertheless, contrary to Patterson's suggestion, the MPRD is not

---

[2] Respondent also correctly notes that Patterson's *ex post facto* claims also fail because Patterson has not identified a retrospective law. *See Burnette v. Fahey*, No. 3:10CV70, 2010 WL 4279403, at *11–12 (E.D. Va. Oct. 25, 2010).

[3] The GCA system provides an incentive to inmate to perform appropriately while incarcerated:

> Based on their behavior, prisoners are assigned to one of four GCA classes. For every thirty days an inmate serves, he receives credit for serving some multiple of thirty days, depending upon his classification. Thus, prisoners in the highest class, GCA Class I, earn thirty additional days of good conduct credit for every thirty days actually served in prison—a multiple of two. Prisoners in GCA Class II earn twenty days, and those in GCA Class III earn ten days, of credit for every thirty days served. Prisoners in the lowest class, GCA Class IV, earn no extra credit for time served. At any time, prisoners may be promoted or demoted in GCA class depending on their behavior and other related factors.

a fixed date. *Id.* (emphasizing "the MPRD is merely a projection")(internal quotation marks omitted).

> [A]s a prisoner earns GCA credits, the DOC recalculates his MPRD by "subtracting" from the prisoner's initial MPRD the sum of the credits already earned and the estimated number of credits the prisoner would earn were he to remain in the same GCA class for the duration of his confinement. Because a prisoner can earn or lose GCA credits, or change GCA class, day-to-day . . . , his MPRD can change from one day to the next, and it is never permanently fixed until the day it is reached.

*Id.* (footnotes omitted). "Prisoners . . . can earn proportionately more GCA credits through promotion into a higher GCA class and lose credits through forfeiture, two occurrences which will cause a recalculation of the MPRD." *Id.* at 567 n.10. Therefore, "at any given moment [an inmate's] MPRD is only a projection." *Id.* "Each time an event occurs that alters a prisoner's MPRD . . ., the [V]DOC provides the prisoner with a computerized 'Legal Update' apprising him of the change, and from which he may calculate the final day of his sentence." *Id.* at 566 n.9.

### 2. Analysis of Claim One

Following his 1992 convictions, Patterson was incarcerated in the VDOC. According to Patterson, on September 27, 1993, Respondent provided him with an update reflecting that his anticipated MPRD was projected to be October 19, 2027. Recently, the VDOC switched to the Virginia Coris Offender Sentence Calculation System ("Coris System"). On October 6, 2009, Patterson received a sentence update from the Coris System, which reflected Patterson's anticipated MPRD to be December 21, 2027. Patterson insists this discrepancy must be attributable to the unexplained forfeiture of GCA credits. Given the lack of permanence of any MPRD and the length of time between the cited legal updates, Patterson's claim is entirely

---

*Coffin*, 983 F.2d at 566 n.5.

4

speculative. Moreover, the evidence tendered by Respondent reflects that Patterson did not lose any GCA credits due to the switch to the Coris System. Rather, as reflected below, prior to the switch to the Coris System, Patterson's anticipated MPRD already had been pushed back to December of 2027.

On or about October 1, 2001, the VDOC provided Patterson with a legal update that reflected his anticipated MPRD to be December 22, 2027. (Mem. Supp. Resp't's Mot. Dismiss Ex. B ("Brown Aff.") Encl. B 1).[4] Thereafter, on or about February 1, 2002, the VDOC provided Patterson with another legal update which again reflected his anticipated MPRD was December 22, 2027. (*Id.* at 2.) The record reflects that Patterson in fact *benefitted* by an advance to his MPRD by the VDOC's switch to the Coris System.

> When the VDOC recalculated Patterson's dates under the Virginia Coris Offender Sentence Calculation System it resulted in a change to his anticipated mandatory parole release date from December 22, 2027 to December 21, 2027. This is due to Virginia Coris'[s] precise handling of mathematical calculation of an offender's total sentence, good time earnings, and other events.

(Brown Aff. ¶ 12.) Because Patterson fails to demonstrate that he faces any risk of increased punishment by the VDOC's use of the Coris Sytem, *see Lynce*, 519 U.S. at 441, Claim One will be DISMISSED.

**B.     Claim Two**

Patterson's initial eligibility for parole is determined pursuant to section 53.1-151(A) of the Virginia Code. Under that provision, "the amount of time a prisoner must serve before being eligible for parole is determined by the number of times a person has been 'convicted of a felony and sentenced and committed . . . .'" *Abdul-Hamid v. Angelone*, No. Civ. A. 00-846-

---

[4] The legal update apparently was generated because Patterson had been reassigned to GCA Class 1 on August 28, 2001. (Brown Aff. Encl. B.)

5

AM, 2001 WL 34779301, at *6 n.4 (E.D. Va. Mar. 9, 2001) (*quoting* Va. Code § 53.1-151(A)).

> A prisoner must serve one-fourth the term of imprisonment after the first time, *see* Va. Code § 53.1-151(A)(1); one-third the term of imprisonment after the second time, *see* Va. Code § 53.1-151(A)(2); one-half the term of imprisonment after the third time, *see* Va. Code § 53.1-151(A)(3); and three-fourths the term of imprisonment after the fourth or subsequent time, *see* Va. Code § 53.1-151(A)(4). The Felon Term Indicator ("FTI") for parole eligibility purposes under subsection (1) of this statute is termed FTI-1; under subsection (2) it is termed FTI-2, and so on.

*Id.* at *6 n.4.

In 1993, Respondent classified Patterson as a FTI-2. Under that designation, Patterson was eligible for parole in the year 2000.[5] Patterson was considered and rejected for parole in that year. In 2002, the VDOC realized that Patterson should have been classified as a FTI-3. (Brown Aff. ¶ 11; Brown Aff. Encl. B 2.) Therefore, on February 1, 2002, the DOC generated a legal update reflecting Patterson's initial discretionary parole eligibility date as June 18, 2001.[6] (Brown Aff. ¶ 11; Brown Aff. Encl. B 2.) "By the time this change occurred, Patterson was already eligible for discretionary parole consideration so there was no adverse effect from this

---

[5] According to Patterson, his initial parole eligibility date was August 16, 2000. (§ 2254 Pet. Attach. 2.) According to Respondent, Patterson's initial parole eligibility date was October 18, 2000. (Brown Aff. ¶ 11; Brown Aff. Encl. B 1.)

[6] Although Patterson suggests his initial parole eligibility date was moved in 2009 with the implementation of the Coris System, the record reflects that correction of his parole eligibility date occurred in 2002. (Brown Aff. Encl. B 2.)

change." (Brown Aff. ¶ 11.)[7] Moreover, Patterson does not dispute that he is in fact and law properly classified as a FTI-3.[8]

Patterson fails to direct the Court to any authority for the proposition that the VDOC's correction of its error amounts to an *ex post facto* violation. *See Glenn v. Johnson*, 761 F.2d 192, 194-95 (4th Cir. 1985) (concluding that parole commission's change of regulation to conform with opinion of the state attorney general was no change in the law, but merely a correction of an erroneous interpretation of the law: the statute unambiguously precluded the old regulation). "The [Ex Post Facto] Clause 'does not prohibit . . . the correction of a misapplied existing law which disadvantages one in reliance on its continued misapplication.'" *Metheny v. Hammonds*, 216 F.3d 1307, 1311 (11th Cir. 2000) (omission in original) (*quoting Stephens v. Thomas*, 19 F.3d 498, 500 (10th Cir. 1994)). Accordingly, Claim Two will be DISMISSED.

### III. Outstanding Matters and Conclusion

There is no constitutional right to counsel in habeas corpus actions. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Moreover, as Patterson's filings demonstrate that he is able to adequately communicate with the Court, justice does not require the appointment of counsel at this time. *See* 18 U.S.C. § 3006A(a)(2)(B). Accordingly, Patterson's Motion for Appointment of Counsel (Docket No. 23) will be DENIED.

---

[7] Patterson alleges this determination has adversely affected him because "the Virginia Parole Board reviews, before considering parole release, the amount of times a prisoner has been eligible for parole release, before deciding parole release." (§ 2254 Pet. Attach. 3.)

[8] On May 23, 1980, Patterson was sentenced in the Circuit Court for, *inter alia*, rape and burglary. (Brown Aff. Encl. C 3.) On March 10, 1982, Patterson was sentenced in the Circuit Court for escape. (Brown Aff. Encl. C 7.) Additionally, in 1992, Patterson was convicted in the Circuit Court of rape, robbery, and two counts of forcible sodomy. *See Patterson v. Va. Dep't Corr.*, No. 96-7438, 1998 WL 957464, at *2 (4th Cir. Sept. 22, 1998)

Patterson has sought to conduct discovery. Patterson must demonstrate good cause before he is allowed to conduct discovery in these habeas proceedings. *Stephens v. Branker*, 570 F.3d 198, 213 (4th Cir. 2009), *cert. denied*, 130 S. Ct. 1073 (2010). "A showing of good cause must include specific allegations suggesting that the petitioner will be able to demonstrate that he is entitled to habeas corpus relief," if the facts are fully developed. *Id.* (*citing Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997)). As reflected above, Patterson cannot satisfy this standard. Accordingly, Patterson's Motion Requesting Discovery (Docket No. 24), Motion for Production of Documents (Docket No. 25), and Request for Admissions (Docket No. 26) will be DENIED.

Respondent's Motion to Dismiss (Docket No. 14) will be GRANTED. The § 2254 Petition will be DENIED and the action will be DISMISSED.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). No law or evidence suggests that Patterson is entitled to further consideration in this matter. A certificate of appealability will be DENIED.

An appropriate Order shall issue.

Date: 5-31-11
Richmond, Virginia

/s/
James R. Spencer
Chief United States District Judge